Lynn S. Walsh, OSB #924955
email: walsh@europa.com
610 SW Alder St., #415
Portland, Oregon 97205
Telephone: 503-790-2772

      Attorney for Plaintiff


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| DAVID BROWN, | NO.  3:19-cv-01048-MO |
| Plaintiff, | |
| v. | FIRST AMENDED COMPLAINT<br>Americans with Disabilities Act (42 U.S.C. 12101 et seq.); Rehabilitation Act (29 U.S.C. § 794); Civil Rights Action (42 U.S.C. § 1983) |
| STATE OF OREGON, TIMOTHY KELLY, MD | |
| Defendants. | DEMAND FOR JURY TRIAL |


This lawsuit concerns the defendants' long-standing policy, procedure and practice of denying medical treatment, equipment, and assistive devices to prisoners with physical disabilities, and then forcing prisoners with no or little income to pay a surcharge for their assistive devices if they wish to access activities, programs and services of the institution.   In Mr. Brown's case, defendants failed to provide him a working prosthetic for his below knee amputation while he was incarcerated in the Oregon Department of Corrections.  As a result, he

Page 1        FIRST AMENDED COMPLAINT

was forced to work while walking on a broken prosthetic, which failed, causing him to injure the

knee on his good leg.  As a result, he had to undergo a total knee replacement.

## JURISDICTION

1.      This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C.

§§1983 and 12101 et seq., 29 USC §794, and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

## VENUE

2.       Venue is proper within the District of Oregon because all of the events giving rise to this

claim occurred in this judicial district, and all defendants reside in this judicial district.  28

U.S.C. § 1391(b).

## PARTIES

3.       Plaintiff David Brown is an adult currently residing in Portland, Multnomah County,

Oregon.  During all relevant times, Mr. Brown was incarcerated at Deer Ridge Correctional

Facility in Madras, Jefferson County, Oregon.

4.       Defendant State of Oregon operates the Oregon Department of Corrections ("ODOC")

facilities.  At all times relevant, the State of Oregon was obligated to accommodate prisoners

with disabilities lodged in its facilities.

5.       Defendant Timothy Kelly, M.D. is a medical doctor at Deer Ridge Correctional Facility

(DRCF) and employee of the Oregon Department of Corrections (ODOC).  He is sued in his

individual capacity.  At all times relevant, he was acting under color of state law.


## FACTUAL ALLEGATIONS

6.       When Mr. Brown entered ODOC in May of 2017, he had a left leg below knee

‡        #        LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com‡

amputation and was using a prosthetic.

7.    Shortly before his incarceration at ODOC, while he was lodged in the Multnomah County Jail, Mr. Brown's prosthetic broke.

8.    Upon entry into ODOC, all prisoners are lodged at Coffee Creek Correctional Facility and go through an intake process.  The intake process includes a medical screening where a prisoner's health problems are noted.  During Mr. Brown's health screening on May 24, 2017, the medical practitioner noted that Mr. Brown's prosthetic was broken.

9.    On May 18, 2017, plaintiff sent two non-emergency health care requests to the medical department to request being placed in a disability room that is much closer to showers, meals, medline, etc. because of his difficulty with walking on the broken prosthesis.  His request was refused.  Even though he was requesting an accommodation for a medical issue, he was told "[h]ousing is a security issue."

10.    On May 27, 2017, a medical practitioner noted that plaintiff's prosthetic will not lock. The practitioner stated that plaintiff would have to wait until he got to his next facility before his prosthetic could be dealt with.   Meanwhile, plaintiff was forced to walk using the broken prosthetic that would slip out on him.

11.    On June 4, 2017, plaintiff sent a kyte requesting a rubber knee brace to hold his prosthetic in place, stating he is having difficulty walking.  It appears that this request was ignored or denied.

12.    On June 10, 2017, plaintiff sent another kyte asking for some "suitable shoes" because he was a "bit unsteady" due to the broken prosthetic.  He was wearing the prison issued "Bob Barkers," which look like low-top Converses but have no support.  Although prison personnel

Page 3          FIRST AMENDED COMPLAINT                ‡      #      LYNN S. WALSH
                                                                                          OSB# 924955
                                                                                      610 SW Alder St., #415
                                                                                       Portland, OR 97205
                                                                                         503-790-2772
                                                                                       walsh@europa.com‡

acknowledged the kyte, he received no response.

13.    On June 13, 2017, plaintiff was transferred to Deer Ridge Correctional Facility (DRCF) in Madras, Oregon.  He was assigned a job in the kitchen that involved walking on slick floors and standing for long periods of time.

14.    On June 14, 2017, plaintiff sent a kyte to the health services stating he was having a difficulty working because his prosthetic was not working correctly.

15.    On June 16, 2017, a medical practitioner noted that plaintiff's prosthetic does not latch, causing plaintiff to slip when he walks.  Plaintiff also complained of his phantom pain from his amputated limb.  The practitioner ordered that plaintiff be given a cane for two weeks, and scheduled plaintiff to see a medical doctor to evaluate for prosthesis needs.   This Order was signed by Dr. Kelly.

16.    Plaintiff saw Timothy Kelly, MD on June 21, 2017.  Although Dr. Kelly increased plaintiff's Neurontin to address the phantom pain, he failed to take any action regarding the broken prosthetic.  Although Dr. Kelly does not mention the broken prosthetic in his progress notes, a subsequent progress note indicates that Dr. Kelly told plaintiff he would have to "self manage/purchase" a prosthetic.  Plaintiff's cane was extended for another two weeks.

17.    Oregon Administrative Rule (OAR) 291-124-0085(2)(a) requires physically disabled prisoners to pay a surcharge (i.e., pay in full) for orthoses, prostheses, devices or other mechanical aids disabled prisoners need to access the programs, services, and activities of the prison.  On the other hand, the OAR does not require prisoners with short term medical needs (i.e., prisoners who are not disabled) to pay for medical aids.

18.    OAR 291-124-0085 further requires that ODOC must approve of the medical request,

Page 4          FIRST AMENDED COMPLAINT          ‡     #     LYNN S. WALSH
                                                              OSB# 924955
                                                         610 SW Alder St., #415
                                                          Portland, OR 97205
                                                            503-790-2772
                                                         walsh@europa.com‡

and the prisoner's trust account must have sufficient funds to pay for the purchase of care before the treatment is scheduled.

19.    OAR 291-124-0085 does not have a provision which requires medical staff to consider, in addition to medical necessity, whether a prostheses or other device is necessary to afford a prisoner with a disability the ability to access the programs, services and activities of the prison.

20.    Like OAR 291-124-0085, the Health Services Section Polity and Procedure #P-G-10 explains the process for a prisoner to obtain a prostheses or other device, but does not require medical staff to consider, in addition to medical necessity, whether a prostheses or other device is necessary to afford a prisoner with a disability the ability to access the programs, services and activities of the prison.  It further explains the surcharge a prisoner must pay, and the method of payment, for obtaining a prosthesis or medical device.

21.    It appears that Dr. Kelly took no action to approve or otherwise facilitate the repair or replacement of the prosthetic even though he knew it was broken.  He did not offer plaintiff a wheelchair.

22.    Dr. Kelly made no determination as to whether Mr. Brown needed a prosthetic device in order to access the programs, services, and activities of the prison.

23.    Plaintiff was required to use the broken prosthetic with a cane.  The cane was not allowed in the kitchen while he was working.

24.    On or about July 2, 2017, plaintiff sent a kyte to the job coordinator requesting light duty because of his difficulties with working in the kitchen on a broken prosthetic.  Although he was ignored at the time, the response to plaintiff's grievance on the issue stated that he should have kyted medical.   This is contrary to what he was told at CCCF when he kyted medical for an

Page 5          FIRST AMENDED COMPLAINT          ‡    #    LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com‡

accommodation.

25.    Even so, Mr. Brown did kyte medical on July 4, 2017 and requested light duty.
Consistent with what he was told at CCCF, the response he received was that "Health Services
does not get involved with job assignments."

26.    Getting nowhere, Mr. Brown reported to work as required on July 4, 2017 wearing his
broken prosthetic that caused him to slip, his flimsy Bob Barkers, and no cane.  As usual, he was
required to walk on the slippery floors.

27.     On July 4, 2017 during the dinner shift the inevitable happened, and Mr. Brown slipped
and fell while working in the kitchen, severely injuring his right knee (on the leg that is not
amputated).

28.    As is typical with ODOC, although not constitutionally or otherwise adequate, the ODOC
providers moved very slowly in helping Mr. Brown recover from his injury.

29.    It took until September 26, 2017 before the TLC Committee approved that Mr. Brown
could "incur debt," i.e. incur the surcharge for the repair to his prosthetic.

30.    Unfortunately, repair was not an option.  Mr. Brown needed a new prosthetic.

31.    The records indicate that Mr. Brown was not sent out for prosthesis fitting until January
of 2018, and did not get surgery on his injured knee until February, 2018.

32.     Mr. Brown required a total knee replacement of his right knee.  He spent about eight
days in the hospital and incurred $49,525.01 in medical bills.

33.    Mr. Brown's trust account was docked the surcharge for the prosthetic device.

34.     The records do not explain why it took Mr. Brown about seven months after his injury
for a prosthetic fitting, and eight months to get his knee surgery.  During that time, Mr. Brown

FIRST AMENDED COMPLAINT        ‡    #    LYNN S. WALSH
                                                                                    OSB# 924955
                                                                              610 SW Alder St., #415
                                                                                Portland, OR 97205
                                                                                  503-790-2772
                                                                              walsh@europa.com‡

had to use a cane to ambulate, and he suffered significant pain.  Likewise, he was unable to work

and access other programs, services and activities of the prison.  He even requested a light duty

job a few months after his injury, but Dr. Kelly denied his request.

35.    The State of Oregon's failure to address Mr. Brown's disabling condition is consistent

with its unlawful policies of refusing to address issues or provide items or devices that the State

describes as "not clearly related to the traditional practice of medicine."  Specifically, and

contrary to the requirements of the Americans with Disability Act, the State believes that items

such as bunk assignment, cell assignment, the need for extra pillows, special shoes, etc. are

comfort items and Health Services will not address such requests.  This unlawful policy was

stated in the April 6, 2018 issue of the Deer Ridge Prints newspaper.  A similar article appeared

in the August 31, 2018 Oregon State Corrections Institution (OSCI) newspaper called the

Oscillator.

36.    Likewise, the State of Oregon (per its rules and policies) automatically deems prosthetics

and prosthetic repair as not medically necessary, yet fails to consider, as required by the ADA,

whether a device is necessary to afford a prisoner with a disability independence and equal

access to programs, services, and activities.

### FIRST CLAIM FOR RELIEF

### (Americans with Disabilities Act and § 504 of the Rehabilitation Act against Defendant
### State of Oregon)

37.    Plaintiff realleges paragraphs 1-36.

38.    The prisons comprising of the Oregon Department of Corrections have been recipients

of federal funds, and are thus covered by § 504's mandate, which requires recipients of federal

FIRST AMENDED COMPLAINT            ‡    #    LYNN S. WALSH
                                                                            OSB# 924955
                                                                            610 SW Alder St., #415
                                                                            Portland, OR 97205
                                                                            503-790-2772
                                                                            walsh@europa.com‡

monies to reasonably accommodate persons with disabilities in their facilities, program

activities, and services, and reasonably modify such facilities, services, and programs to

accomplish this purpose.

39.      The prisons comprising of the Oregon Department of Corrections are public entities

within the meaning of Title II of the ADA, and provide programs, services or activities to the

general public.   Title II of the ADA has essentially the same mandate as Section 504.

40.      At all times relevant to this action, Mr. Brown was a qualified individual within the

meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of

the services, programs, or activities of ODOC.   Specifically, Mr. Brown's right leg was

amputated below the knee which "substantially limits one or more major life activities,"

including but not limited to the general life activities such as standing and walking.  42 U.S.C.

§12102.

41.      The Oregon Department of Corrections provides housing, meals, medical and mental

health treatment, recreation, work and educational programs to prisoners, which comprise

programs and services for Section 504 and Title II purposes.

42.      Under the ADA and Rehabilitation Act, the Oregon Department of Corrections is

required to accommodate disabled prisoners, provide the same level of medical care to disabled

prisoners, and accommodate disabled prisoners in a manner which allows prisoners to participate

in the same programs and services as those prisoners who are not disabled.

43.      Mr. Brown's need for accommodation was well documented in the medical file.

Likewise, his multiple requests for accommodation is well documented in the medical file, kytes

and his grievances.

‡        #      LYNN S. WALSH
                                  OSB# 924955
                                  610 SW Alder St., #415
                                  Portland, OR 97205
                                  503-790-2772
                                  walsh@europa.com‡

44.     The Oregon Department of Corrections personnel was deliberately indifferent in failing to provide Mr. Brown with reasonable accommodations and other services related to his disabilities, and denied him the rights and benefits accorded to other inmates, solely by reason of his disabilities in violation of the ADA and Rehabilitation Act in the following particulars:

a.  The Oregon Department of Corrections' policies, procedures and rules discriminate against people with physical disabilities.  In particular, the policies, procedures and rules require physically disabled prisoners to pay out of pocket for their assistive devices without consideration as to whether the prosthetics are necessary in order to access the programs, services and activities of the prison.  On the other hand, prisoners who are not physically disabled but are suffering from a temporary disabling medical condition are not required to pay for mechanical aids to treat "acute treatment of a limited medical condition."  This is in violation of the following federal regulations:

(a)  28 CFR §35.150(b)(1)(ii) which requires a public entity to provide a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is equal to that afforded others;

(b) 28 CFR §35.150(b)(1)(iv) which requires a public entity to provide a qualified individual with a disability the same aids, benefits, or services that are provided to others; and

(c) 28 CFR §35.150(1)(vii) which requires a public entity to provide a qualified individual with a disability the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

b.  By denying prosthetic devices unless a prisoner pays for such device, the rules, policies and procedures of the Oregon Department of Corrections have the purpose or effect of

Page 9          FIRST AMENDED COMPLAINT          ‡     #     LYNN S. WALSH
                                                                    OSB# 924955
                                                                    610 SW Alder St., #415
                                                                    Portland, OR 97205
                                                                    503-790-2772
                                                                    walsh@europa.com‡

defeating or substantially impairing accomplishment of the objectives of the public entity's programs with respect to individuals with disability.  If a prisoner cannot afford to pay for the device, he cannot participate in the programs of the prison such as work, recreation, and other activities.

b.   Under the Americans with Disability Act, ODOC must provide accommodations, including assistive devices, to ensure the prisoner has equal access to prison services, programs, or activities with the greatest degree of independence.  Thus, medical staff must consider, in addition to the medical necessity of an item, whether an appliance is necessary to afford a prisoner with a disability his independence and equal access to programs, services, and activities. ODOC staff failed to consider anything whatsoever except the cost of fixing or replacing the prosthetic.

c.   The Oregon Administrative Rules require prisoners to pay for their own prosthetic devices.  This is in direct contradiction to 28 CFR §35.130(f) which prohibits a public entity from placing a surcharge on a particular individual with a disability to cover the costs of measures, such as the provision of an auxiliary aid like a prosthetic limb.

d.   The Oregon Department of Corrections failed to accommodate Mr. Brown's disability by failing to timely address Mr. Brown's broken prosthetic thus leading to his severe knee injury, in violation of the Eighth Amendment to the United State Constitution;

e.   As a result of having a broken prosthetic and subsequent injury, the Oregon Department of Corrections denied Mr. Brown programs, services, and activities of the prison, e.g., a job, recreation, etc. as a result of his disability.

f.   As a result of having a broken prosthetic and subsequent injury, Mr. Brown was

‡       #       LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com‡

denied the opportunity to participate in programs that would have resulted in approximately six months of trans leave time, thus delaying his release date by about six months.

45.     The Oregon Department of Corrections personnel could have taken readily achievable measures to accommodate Mr. Brown but failed to do so.  A readily achievable measure includes, but is not limited to, providing Mr. Brown with a working prosthetic, fixing his prosthetic, providing him appropriate footwear (which Mr. Brown requested) and giving him a job that did not involve long periods of standing or walking on slippery surfaces.

46.     The Oregon Department of Corrections personnel failed to implement and enforce appropriate policies and procedures to ensure the provision of necessary accommodations to inmates with disabilities.  There is no rule, policy or procedure in place that requires medical practitioners to consider a prisoner's disability and ability to access programs and services when providing medical care.  In fact, there is no policy or procedure that informs a prisoner as to how they can go about requesting an accommodation due to a disability.  As demonstrated above, the various prisons appear to have implemented inconsistent procedures as to the appropriate way for a prisoner to request an accommodation.  For example, when Mr. Brown kyted medical for an accommodation in his housing unit at CCCF, he was told it was a security issue.  When he kyted the kitchen for an accommodation at DRCI, he was told it was a medical issue.

47.     The Oregon Department of Corrections personnel failed to train and supervise the prison personnel (including the medical providers) to provide necessary accommodations to prisoners with disabilities.

48.     As a direct and proximate result of ODOC personnel's foregoing wrongful acts, defendant State of Oregon discriminated against Mr. Brown on the basis of his disability in

Page 11          FIRST AMENDED COMPLAINT                    ‡          #          LYNN S. WALSH
                                                                          OSB# 924955
                                                                          610 SW Alder St., #415
                                                                          Portland, OR 97205
                                                                          503-790-2772
                                                                          walsh@europa.com‡

violation of the Americans with Disabilities Act and Rehabilitation Act, causing him to incur a surcharge to pay for his prosthetic limb, injure his knee which required a total knee replacement, and be denied the programs, services and activities of the prison.

49.    Accordingly, plaintiff is entitled to economic and non-economic damages in an amount to be determined at trial against defendant State of Oregon for the violations of 42 U.S.C. § 12101 et seq., § 504 of the Rehabilitation Act, and for plaintiff's attorney fees and costs pursuant to 29 USC § 794a(b) and 42 U.S.C. §§ 12205 and 1988.

## SECOND CLAIM FOR RELIEF

### (Civil Rights 42 USC § 1983 against Defendant Kelly)

50.    Plaintiff realleges paragraphs 1-36.

51.    Dr. Kelly was deliberately indifferent to Mr. Brown's serious medical needs and serious risk of harm as follows:

   a.    In failing to address his broken prosthetic in a timely manner, thus forcing Mr. Brown to walk and work using a prosthetic that would slip, thus causing his knee injury;

   b.    In failing to address the broken prosthetic and knee injury in a timely manner thus relegating Mr. Brown to the continued use of a cane, a dangerous prosthetic and severe pain; and

   c.    In forcing Mr. Brown to use a broken prosthetic and incur a surcharge without considering whether he needed a functioning prosthetic in order to access the programs, services and activities of the institution.

52.    As a result of the Dr. Kelly's deliberate indifference, he violated Mr. Brown's right to be free from cruel and unusual punishment under the Eighth Amendment of the United States

Page 12          FIRST AMENDED COMPLAINT          ‡     #     LYNN S. WALSH
                                                              OSB# 924955
                                                           610 SW Alder St., #415
                                                             Portland, OR 97205
                                                               503-790-2772
                                                            walsh@europa.com‡

Constitution.

53.     As a result of Dr. Kelly's violation of Mr. Brown's Constitutional rights, Mr. Brown was

placed at risk of serious harm, he suffered a severe knee injury, he incurred additional economic

damages for the illegal surcharge, and he suffered physical and mental pain and suffering.

Accordingly, plaintiff is entitled to economic and non-economic damages against defendants in

an amount to be determined at trial for the violations of 42 U.S.C § 1983 and for plaintiff's

attorney fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, plaintiff prays for relief as follows:

a.  For judgment in favor of plaintiff against defendants for his economic and non-

economic damages;

b.  For reasonable attorneys' fees and costs pursuant to 29 USC § 794a and 42 U.S.C. §§

1988 and 12205; and

c.  For such other and further relief as may appear just and appropriate.

DATED:   January 2, 2020.

    /s/ Lynn S. Walsh
Lynn S. Walsh, OSB #92495
(503)790-2772
Attorney for plaintiff

‡        #      LYNN S. WALSH
                                    OSB# 924955
                                    610 SW Alder St., #415
                                    Portland, OR 97205
                                    503-790-2772
                                    walsh@europa.com‡